UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MICHELLE RENEE SMITH, ) | CASE NO. 3:16CV1073 |
| ) | |
| Plaintiff, ) | JUDGE JAMES G. CARR |
| ) | |
| v. ) | Magistrate Judge George J. Limbert |
| ) | |
| NANCY A. BERRYHILL[1], ) | |
| ACTING COMMISSIONER OF ) | REPORT AND RECOMMENDATION |
| SOCIAL SECURITY, ) | OF MAGISTRATE JUDGE |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Michelle Renee Smith ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on October 10, 2016, Plaintiff asserts that the administrative law judge's ("ALJ") residual functional capacity ("RFC") finding lacked the support of substantial evidence because the finding did not properly account for all of Plaintiff's functional limitations. ECF Dkt. #13 at 13-14. Defendant filed a response brief on December 20, 2016. ECF Dkt. #16. On January 3, 2017, Plaintiff filed a reply brief. ECF Dkt. #17.

For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

## I.  FACTUAL AND PROCEDURAL HISTORY

On February 7, 2013, Plaintiff filed applications for DIB and SSI, alleging disability beginning January 10, 2012. ECF Dkt. #10 ("Tr.") at 143.[2] Plaintiff's claims were denied initially

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than

and upon reconsideration. *Id.* Plaintiff then requested a hearing, which was held on December 18, 2014. *Id.* at 162. On February 25, 2015, the ALJ issued a decision denying Plaintiff's claims. *Id.* at 140. Subsequently, the Appeals Council denied Plaintiff's request for review. *Id.* at 1. Accordingly, the February 25, 2015, decision issued by the ALJ stands as the final decision.

Plaintiff filed the instant suit seeking review of the ALJ's February 25, 2015, decision on May 4, 2016. ECF Dkt. #1. On October 10, 2016, Plaintiff filed a brief on the merits. ECF Dkt. #13. Defendant filed a response brief on December 20, 2016. ECF Dkt. #16. On January 3, 2017, Plaintiff filed a reply brief. ECF Dkt. #17.

## II. RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE

### A. Medical Evidence

In December 2012, Plaintiff visited Mercy Health Partners ("MHP") and reported feeling "more depressed." Tr. at 528. It was noted that Plaintiff had decreased range of motion in her right shoulder, but that the range of motion had improved since her last visit. *Id.* at 529. Further, the report indicated that Plaintiff "look[ed] depressed, tearfully during [the] encounter." *Id.* Plaintiff was diagnosed with cervical radiculopathy, hyperlipidemia, and depression. *Id.*

On January 8, 2013, Plaintiff underwent a behavioral health assessment with Linda Myerholtz, Ph.D. Tr. at 540. Plaintiff reported the following symptoms of depression: anhedonia, depressed mood, fatigue, hopelessness, insomnia, psychomotor retardation, suicidal thoughts without a plan, and weight loss. *Id.* Continuing, Plaintiff stated that her symptoms began after she was fired from her job in February 2011. *Id.* It was noted that Plaintiff's symptoms were exacerbated from dealing with chronic pain in her shoulders and arms. *Id.* Plaintiff's affect was flat, her mood was dysphoric, and it was also noted that her psychomotor activity was slowed and her speech was slow. *Id.* at 541. Additionally, Plaintiff reported a history of sexual abuse as a child by her mother's nephew, and that she actively avoided crowds and spent most of her time in her bedroom. *Id.* Plaintiff stated that she had tried to work, but that her pain was so severe that she had not been able to maintain employment. *Id.* Dr. Myerholtz diagnosed Plaintiff with major depressive

---

the page number assigned when the Transcript was filed in the CM/ECF system.

-2-

disorder and assigned a global assessment of functioning ("GAF") score of forty-six to fifty. *Id.* at 542.

On January 29, 2013, Plaintiff presented to Dr. Myerholtz with flat affect, dysphoric mood, linear thought process, no suicidal ideation, a "very concrete thought style," and psychomotor retardation. Tr. at 745. Plaintiff stated that she was taking Prozac, but that it made her "feel like a zombie." *Id.* It was noted that Plaintiff indicated that she felt "better" after the session. *Id.* Plaintiff attended a follow-up session with Dr. Myerholtz on February 19, 2013. *Id.* at 570. Dr. Myerholtz stated that Plaintiff's mood was flat, she provided minimal responses during the session, and that she felt "jittery" as the result of the Prozac. *Id.* Plaintiff also attended another follow-up session in April 2013, during which she displayed flat affect, dysphoric mood, linear thoughts, guarded behavior, and no suicidal ideation. *Id.* at 739. It was noted that Plaintiff: was frustrated with her shoulder pain and health care providers; continued to isolate herself in her apartment; and spent most of her time in bed watching television. *Id.* Plaintiff's finances, lack of transportation, and dislike of crowds were noted as barriers for engaging in pleasant activities. *Id.* During the session, Plaintiff agreed to engage in one pleasant activity over the two weeks following the session. *Id.* In June 2013, Plaintiff presented to Dr. Myerholtz with flat affect, dysphoric mood, linear thought process, guarded and mistrustful behavior, and no suicidal ideation. Tr. at 735.

In late June 2013, Plaintiff underwent a psychological consultative examination with Brithany H. Pawloski, Psy.D. Tr. at 726. Dr. Pawloski indicated that Plaintiff: was appropriate and cooperative; displayed lethargy and psychomotor retardation; cried periodically throughout the interview; displayed no bizarre behaviors; displayed thought processes consistent with speech, which was both logical and well organized; presented without delusional beliefs; displayed blunted affect; and experienced passive thoughts of suicide, but had no plan or intention. *Id.* at 729. Plaintiff stated that she was worried about finances, but Dr. Pawloski noted that there were no outward manifestations of anxiety. *Id.* Dr. Pawloski indicated that Plaintiff's recent, remote, and immediate memory appeared within normal limits, and that Plaintiff's intellectual functioning was in the low average range. *Id.* Plaintiff was diagnosed with major depressive disorder (recurrent, moderate). *Id.* at 730. Dr. Pawloski opined that: Plaintiff's depressive symptoms did not appear to

-3-

impact her ability to complete tasks and apply instructions within a work setting; based on Plaintiff's report that she had no significant difficulties maintaining persistence and pace to perform simple and multi-step tasks, she would have no limitations in this area; and Plaintiff would struggle initially in her interactions with co-workers and supervisors, "but with some time there would be no major significant problems." *Id.* at 731. Finally, Dr. Pawloski indicated that if Plaintiff was "able to physically work, it would not be anticipated that any mental health issues would impair her ability to handle work pressure." *Id.* at 732.

On July 2, 2013, Dr. Myerholtz indicated that Plaintiff presented with appropriate and congruent affect, dysphoric mood, linear thought process, open and friendly behavior, and non-suicidal morbid ideation at times. Tr. at 733. Also in July 2013, Karla Voyten, Ph.D., examined Plaintiff's records on behalf of the state agency. *Id.* at 179-91. Dr. Voyten opined that Plaintiff was moderately limited in: carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule; and completing a normal workday without interruption from her mental impairments. *Id.* at 187-88. Continuing, Dr. Voyten opined that Plaintiff was markedly limited in her ability to interact appropriately in public, and moderately limited in her ability to accept instructions from supervisors, respond appropriately to criticism from supervisors, and to get along with her co-workers and peers without distracting them or exhibiting behavioral extremes. *Id.* at 188. Dr. Voyten also opined that Plaintiff was moderately limited in her ability to respond appropriately to changes in work setting. *Id.* Next, Dr. Voyten indicated that Plaintiff had longstanding depressive disorder for which she was receiving treatment, and that "neither significant resolution of [symptoms] or significant deterioration of mental functioning [was] expected." *Id.* at 188-89. Dr. Voyten further opined that Plaintiff could deal with occasional changes in routine and required a calm, consistent setting with clear performance expectations and no fast-paced production demands. *Id.* at 189.

On September 10, 2013, Plaintiff presented to Dr. Myerholtz with a full-range of affect, dysphoric mood, linear thought process, open and cooperative behavior, and no suicidal ideation. Tr. at 781. At the session, Plaintiff reported feeling "more depressed" and it was noted that Plaintiff was struggling to follow through with physical therapy referrals. *Id.* at 783. Dr. Myerholtz

-4-

indicated that Plaintiff was able to sustain her previous employment by having a factory job that involved minimal contact with others. *Id.* Continuing, Dr. Myerholtz stated that within the previous month, Plaintiff had began to "have experiences where she believe[d] the TV [was] now being critical of her." *Id.* Dr. Myerholtz noted that Plaintiff knew that these experiences were not real, but still found the experiences frightening. *Id.* On September 24, 2013, Plaintiff presented to Dr. Myerholtz with flat affect, anxious mood, linear thought process, open and cooperative behavior, and no suicidal ideation. *Id.* at 775. During this session, Plaintiff reported that she was "very anxious" about her physical therapy appointment the following day due to fears relating to being around other people and the therapist, but rated her anxiety as "manageable" after establishing a plan with Dr. Myerholtz. *Id.*

On October 11, 2013, Bruce Goldsmith, Ph.D., reviewed Plaintiff's records on reconsideration for the state agency. Tr. at 193-207. Dr. Goldsmith affirmed Dr. Voyten's opinion, indicating that Plaintiff could perform work in a calm, consistent setting with clear performance expectations and no fast-paced production demands. *Id.* at 205. On October 15, 2013, Plaintiff presented to Dr. Myerholtz with appropriate and congruent affect, anxious mood, linear thought process, open and cooperative behavior, and no suicidal ideation. *Id.* at 1093. Plaintiff reported feeling anxious about sitting in the waiting room, instead choosing to wait in the hallway until her appointment began, and stated that her anxiety dissipated once she was in Dr. Myerholtz's office. *Id.* Plaintiff met with Dr. Myerholtz again on November 5, 2013, and presented with flat affect, dysphoric mood, linear thought process, open and cooperative behavior, and non-suicidal morbid ideation. *Id.* at 1101. Dr. Myerholtz reported that Plaintiff was struggling with anxiety when she left her appointment, had lost her appetite, was not sleeping well, and was tired of doctor's appointments. *Id.*

On January 14, 2014, Plaintiff visited Dr. Myerholtz and displayed appropriate and congruent affect, dysphoric mood, linear thought process, open behavior, and no suicidal ideation. Tr. at 1126. Plaintiff was visibly anxious at the beginning of the session and expressed fear that her anxiety was worsening. *Id.* On January 22, 2014, Plaintiff underwent a psychological consultative examination with C. Benson-Blankenship, Ph.D. *Id.* at 1122. Plaintiff reported a history of

depression and panic disorder with agoraphobia. *Id.* On examination, Plaintiff's gaze was somewhat downcast, her affect was moderately depressed, and her speech was normal. *Id.* at 1123. Plaintiff exhibited reduced energy and slumped posture. *Id.* Continuing, Plaintiff indicated that she had a driver's license, was able to navigate the community, and did her own household chores including cleaning, mopping, vacuuming, laundry, and cooking three meals a day. *Id.* Additionally, Plaintiff stated that she bought her own groceries, managed her own finances, socialized with immediate family, and did not have any hobbies. *Id.* Dr. Benson-Blankenship indicated that there was evidence of anxiety as Plaintiff "tapped her hands in a repetitive fashion." *Id.* at 1124. Dr. Benson-Blankenship diagnosed Plaintiff with nicotine dependence, major depressive disorder (chronic, moderate), pain disorder with agoraphobia, and cocaine dependence in sustained full remission. *Id.* at 1125.

Plaintiff presented to Dr. Myerholtz in February 2014 with congruent and flat affect, dysphoric mood, linear thought process, open behavior, and no suicidal ideation. Tr. at 1154. Dr. Myerholtz noted that Plaintiff was struggling to meet her basic needs, but was hesitant to go to a food pantry due to dealing with people. *Id.* Continuing, Dr. Myerholtz indicated that Plaintiff's social anxiety was worsening, but that she was ambivalent about treating the anxiety "more actively." *Id.* In March 2014, Plaintiff visited Dr. Myerholtz and displayed consistent affect with expectations based on mood, dysphoric mood, linear thought process, tearful behavior, and non-suicidal morbid ideation. *Id.* at 1162. Dr. Myerholtz indicated that Plaintiff was having suicidal thoughts, but had no plan or intent to act, and that her social anxiety continued to hinder her progress moving forward with considering new options for dealing with her financial stress. *Id.* at 1163. In April 2014, Plaintiff presented to Dr. Myerholtz with consistent affect with expectations based on mood, dysphoric and anxious mood, linear and goal oriented thought process, open behavior, and no suicidal ideation. *Id.* at 1373. Plaintiff indicated that she did not think her medication was helping, and Dr. Myerholtz encouraged her to speak to her primary care physician about changing medications. *Id.* at 1374.

In May 2014, Plaintiff visited Dr. Myerholtz and displayed flat affect, dysphoric mood, linear thought process, open and tearful behavior, and non-suicidal morbid ideation. Tr. at 1406. Dr.

Myerholtz and Plaintiff discussed her plans in the event her Social Security claim was again denied. *Id.* The possibility of vocational rehabilitation was discussed, and Dr. Myerholtz indicated that Plaintiff would need a position where she did not interact with others "much at all," was not required to lift heavy items or move her arms above her shoulders, and could have the flexibility to walk or sit as needed. *Id.* In June 2014, Plaintiff presented to Dr. Myerholtz with flat affect, dysphoric mood, linear thought process, open behavior, and no suicidal ideation. *Id.* at 1416-17. Dr. Myerholtz reported that Plaintiff continued "to feel fairly helpless that things can change in her life," and had a negative interaction with her mother that resulted in feelings of anger. *Id.* at 1417. In July 2014, Plaintiff visited Dr. Myerholtz and displayed flat affect, dysphoric mood, linear and goal directed thought process, open behavior, and no suicidal ideation. *Id.* at 1427-28.

In September 2014, Plaintiff presented to Dr. Myerholtz with flat affect, dysphoric mood, linear thought process, open and cooperative behavior, and no suicidal ideation. Tr. at 1485. Dr. Myerholtz reported that Plaintiff was very anxious at the beginning of the session and that she reported increased overall anxiety linked to caring for her grandchildren for a week while her daughter was in the hospital. *Id.* In October 2014, Plaintiff visited Dr. Myerholtz and displayed consistent affect with expectations based upon mood, dysphoric and anxious mood, linear and goal oriented thought process, open behavior, and no suicidal ideation. *Id.* at 1497. Plaintiff was advised that Dr. Myerholtz was leaving MHP, and she stated that she was sad to terminate treatment with Dr. Myerholtz, but agreed to continue therapy with a new provider. *Id.* In November 2014, Plaintiff presented to Dr. Myerholtz with consistent affect with expectations based on mood, dysphoric and anxious mood, linear and goal directed thought process, open and tearful behavior, and no suicidal ideation. *Id.* at 1509. Plaintiff was tearful when talking to Dr. Myerholtz about ending their sessions together, but was able to verbalize some ways in which therapy had helped her cope. *Id.* Dr. Myerholtz diagnosed Plaintiff with major depressive disorder (recurrent episode, moderate) and social anxiety disorder. *Id.*

### **B.     Testimonial Evidence**

The ALJ held a hearing on December 18, 2014. Tr. at 162-78. Plaintiff, her counsel, and a vocational expert ("VE") appeared for the hearing. *Id.* at 164. On questioning by the ALJ,

Plaintiff testified that she had not worked since December 2011 when she was fired from her job for attempted assault after she tried to run over another employee because "he was lying." *Id.* at 168. Plaintiff also indicated that she was having problems at that job because she "was on workman's comp[ensation] a lot." *Id.* at 169. Next, Plaintiff was asked by the ALJ how she spent a typical day. Tr. at 175. Plaintiff testified that "from time to time [she] woke up wondering if [she was going to] put on clothes" due to pain in her arm, and that she could not dress, wash herself, or do her hair. *Id.* Continuing, Plaintiff indicated that she may have a bowl of cereal, and that she would then lay down and watch television. *Id.*

Plaintiff was then questioned by her attorney. Tr. at 170. On questioning, Plaintiff testified that she could not lift her left arm and could not lift anything with her left hand, and that her right arm was perpetually numb and that she constantly dropped objects held in the right hand. *Id.* at 171. Plaintiff also stated that she did not like "to be around a lot of people." *Id.* Continuing, Plaintiff stated that: her anxiety made her feel nervous and anxious; the only time she left her house was to attend doctor's appointments; she always booked her doctor's appointments as the last appointment of the day; and she tried going to the store but always ended up walking out. *Id.* at 172. Plaintiff also reiterated the problems in her arms and hands, stated that she had difficulty performing chores, and added that she was always tired from her medications. *Id.*

The VE was then examined by the ALJ. Tr. at 174. The ALJ posed a hypothetical individual that could perform work that involved: lifting no more then twenty pounds at a time, with frequent lifting or carrying of objects weighing up to ten pounds, and pushing or pulling similar amounts; standing, walking, and sitting for six hours each; no climbing of ropes, ladders, or scaffolds; no more than frequent performance of all other postural activity; no more than frequent reaching with the non-dominant left upper extremity; no reaching above shoulder level with either extremity; no more than occasional interaction with supervisors and co-workers; no more than superficial, incidental contact with the public such as sharing common areas like hallways and elevators; and no more than simple, routine, repetitive tasks. *Id.* The ALJ then asked the VE if an individual with the limitations posed in the hypothetical could perform jobs that existed in the national economy. *Id.* The VE

testified that such an individual could perform work as an assembler, inspector for batteries, and shipping and receiving clerk. *Id.* at 175.

The VE was then questioned by Plaintiff's attorney. Tr. at 175. Plaintiff's attorney asked the VE whether the jobs cited by the VE could be performed by the hypothetical individual if said individual was limited to lifting ten pounds occasionally and less than ten pounds frequently. *Id.* at 176. The VE testified that the three jobs offered could not be performed with this modification as the hypothetical individual, as modified by Plaintiff's counsel, could only perform work at the sedentary level. *Id.* Plaintiff's counsel then added the limitation that the handling, fingering, and feeling requirements of the job must be less than occasional. *Id.* The VE testified that such a limitation would substantially reduce the number of jobs available under the sedentary category. *Id.* Following a brief closing statement by Plaintiff's counsel, the ALJ concluded the hearing. *Id.* at 176-77.

### III.  **RELEVANT PORTIONS OF THE ALJ'S DECISION**

After holding the hearing on December 18, 2014, the ALJ issued a decision on February 25, 2015. Tr. at 140. The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016, and that Plaintiff had not engaged in substantial gainful activity since January 10, 2012, the alleged onset date. *Id.* at 145. Continuing, the ALJ determined that Plaintiff had the following severe impairments: cervical spine disorder, left shoulder disorder, affective disorder, and anxiety-related disorder. *Id.* The ALJ then found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 146.

After consideration of the record, the ALJ found that Plaintiff retained the RFC for work that involved: lifting no more than twenty pounds at a time, with frequent lifting or carrying of objects weighing up to ten pounds, and pushing or pulling similar amounts*;* standing, walking, and sitting for six hours each; no climbing of ropes, ladders, or scaffolds; no more than frequent ability to perform all other postural activity; no more than frequent reaching with the non-dominant left upper extremity; no reaching above shoulder level with either upper extremity; no more than occasional interaction with supervisors and co-workers; no more than superficial/incidental contact with the

public, such as sharing common areas like hallways and elevators; and no more than simple, routine, repetitive tasks. Tr. at 148.

Following the RFC finding, the ALJ indicated that no finding was made as to past relevant work, and that the finding at step four in this case was not material because all applicable grid rules (Medical-Vocational Guidelines) directed to finding that Plaintiff was not disabled. Tr. at 153. The ALJ then indicated that Plaintiff was a younger individual on the alleged disability onset date, had at least a high school education and was able to communicate in English, and that the transferability of jobs skills was not at issue because no finding was made regarding past relevant work. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* at 154. In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 10, 2012, the alleged onset date, through the date of the decision.

## IV.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V.     STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cole v. Astrue*, 661 F.3d 931, 937(citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal citation omitted)).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance."  *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007).  Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled.  The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference."  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001).  However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## VI.    LAW AND ANALYSIS

Plaintiff asserts that the ALJ's RFC finding lacked the support of substantial evidence because it did not properly account for all of her functional limitations.  ECF Dkt. #13 at 13-14.  Specifically, Plaintiff cites *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010), for

-11-

the proposition that it is reversible error not to include speed- and pace-based requirements in the RFC finding for a claimant who was found to have such limitations at prior steps of the sequential evaluation. *Id.* at 13. Continuing, Plaintiff indicates that the Northern District of Ohio has held:

> *Ealy* does not require further limitations in addition to limiting a claimant to "simple, repetitive tasks" for every individual found to have moderate difficulties in concentration, persistence, or pace. Instead, *Ealy* stands for a limited, fact-based, ruling in which the claimant's particular moderate limitations required additional speed- and pace-based restrictions.

*Jackson v. Comm'r of Soc. Sec.*, No 1:10CV763, 2011 WL 4943966, at *4 (N.D. Ohio Oct. 18, 2011).

According to Plaintiff, a review of the record shows that Plaintiff required specific limitations regarding her moderate difficulties with concentration, persistence, or pace. ECF Dkt. #13 at 14. Specifically, Plaintiff states that Dr. Voyten and Dr. Goldsmith, the state-agency psychological consultants, separately opined that Plaintiff required a calm, consistent setting with clear performance expectations and no fast-paced production demands. *Id.* Plaintiff asserts that the limitation that any work that could be performed must be without fast-paced production demands was missing from the ALJ's RFC finding despite significant weight being assigned to the opinions of Dr. Voyten and Dr. Goldsmith, and that the ALJ's questioning of the VE never hinted at the fact that Plaintiff was incapable of such work. *Id.*

Defendant contends that the ALJ reasonably determined that the RFC accounted for all of Plaintiff's functional limitations. ECF Dkt. #16 at 8-14. After asserting generally that the ALJ's RFC finding accurately represented Plaintiff's functional limitations, Defendant discusses the opinions of Dr. Voyten and Dr. Goldsmith. *Id.* at 10-14. Specifically, Defendant indicates that Dr. Voyten and Dr. Goldsmtih determined that Plaintiff: was no more than moderately impaired by her psychological symptoms and retained the ability to perform simple to moderately complex tasks; could relate to co-workers and supervisors on an occasional and superficial basis, while avoiding work that required frequent interaction with the public; could deal with occasional changes in routine; and would require a calm, consistent setting with clear performance expectations and no fast-paced production demands. *Id.* at 10.

-12-

Next, Defendant indicates that the ALJ afforded the opinions of Dr. Voyten and Dr. Goldsmith significant weight because the opinions were based on the longitudinal record and were supported by the record as a whole. ECF Dkt. #16 at 11 (citing Tr. at 152). Defendant states that based, in part, on the opinions of Dr. Voyten and Dr. Goldsmith, the ALJ limited Plaintiff to "no more than occasional interaction with supervisors and co-workers, and no more than superficial/incidental contact with the public." *Id*. Continuing, Defendant avers that the ALJ also provided the limitation of no more than simple, routine, repetitive tasks to accommodate any difficulties managing typical workplaces stress "despite little deficits in task completion." *Id.* (citing Tr. at 152). Defendant asserts that, for the above reasons, the ALJ accounted for Plaintiff symptoms in the RFC finding, and that the finding enjoyed the support of Dr. Myerholtz's treatment notes, as well as the opinion evidence from Dr. Pawloski, Dr. Voyten, and Dr. Goldsmith. *Id.* Additionally, Defendant notes that while Plaintiff's psychological symptoms provided some moderate limitations, the Sixth Circuit has recognized that moderate limitations do not necessarily prevent an individual from functioning satisfactorily. *Id.* (citing *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 426-28 (6th Cir. 2007).

Defendant asserts that Plaintiff's argument that the ALJ erred by not including additional limitations to reflect her moderate difficulties in maintaining pace fails because the record does not support a pace-based limitation. ECF Dkt. #16 at 11. To support this position, Defendant indicates that Plaintiff reported to Dr. Pawloski that her life-long depressive symptoms did not prevent her from maintaining persistence and pace. *Id.* at 11-12 (citing Tr. at 731). Additionally, Defendant states that Dr. Myerholtz, who treated Plaintiff over the course of several years, assessed Plaintiff's major issue as social functioning, and Dr. Myerholtz's progress notes chart Plaintiff's struggle to overcome her social anxiety. *Id.* at 12 (citing Tr. at 1406).

Regarding Plaintiff's reliance on the opinions of Dr. Voyten and Dr. Goldsmith, Defendant asserts that responsibility for deciding Plaintiff's RFC rests with the ALJ, not a physician. ECF Dkt. #16 at 12 (citing *Martin v. Comm'r of Soc. Sec.*, 170 Fed.Appx. 369, 372 (6th Cir. 2006); *Vlach v. Comm'r of Soc. Sec.*, No. 1:12CV2452, 2013 WL 3766585, at *12 (N.D. Ohio July 16, 2013)). On this basis, Defendant argues that the ALJ was not required to adopt restrictions from the opinions

of Dr. Voyten and Dr. Goldsmith where the evidence did not support the opinions, and, here, Plaintiff failed to provide support for her alleged restrictions in pace. *Id.*

Continuing, Defendant avers that Plaintiff's statements support the ALJ's determination that she did not require pace-based restrictions. ECF Dkt. #16 at 12. Namely, Defendant points to testimony provided by Plaintiff at the hearing where, upon questioning by the ALJ, Plaintiff testified that the reasons she was unable to work were related to her social anxiety, rather than the pace at which she could complete tasks, and that this testimony was consistent with Dr. Myerholtz's treatment notes. *Id.* at 12-13 (citing Tr. at 168-69, 172). Further, Defendant indicates that at the consultative examination with Dr. Pawloski, Plaintiff denied any history of difficulty maintaining persistence and pace when performing job tasks. *Id.* at 13 (citing Tr. at 731). For these reasons, Defendant contends that the ALJ reasonably determined that "additional restrictions [were] not merit[ed] as based on [Plaintiff's] stable condition." *Id.* at 13-14 (quoting Tr. at 152).

Plaintiff's argument is without merit. The sole argument presented by Plaintiff is based entirely on the fact that Dr. Voyten and Dr. Goldsmith opined that Plaintiff required a calm, consistent setting with clear performance expectations and no fast-paced production demands. *See* ECF Dkt. #13 at 13-14. However, the ALJ was not required to adopt the limitations contained in the opinions of Dr. Voyten and Dr. Goldsmith. Defendant correctly states that responsibility for deciding Plaintiff's RFC rests with the ALJ, not a physician. "The ALJ... retains the responsibility for making the ultimate decision of whether the claimant is disabled." *Schuler v. Comm'r of Soc. Sec.,* 109 Fed.Apps. 97, 101 (6th Cir. 2004). Here, the ALJ considered that opinions of Dr. Voyten and Dr. Goldsmith, afforded the opinions significant weight, incorporated the portions of the opinions that were supported by the record into the RFC finding, and then indicated that additional mental restrictions was not required based on Plaintiff's relatively stable condition. Tr. at 152.

Plaintiff does not claim that Dr. Voyten and/or Dr. Goldsmith were treating medical sources, and the record shows that Dr. Voyten and/or Dr. Goldsmith were not treating medical sources. Accordingly, no special analysis is required beyond a determination as to whether the ALJ's findings were supported by substantial evidence. *See* 42 U.S.C. §405(g). In the instant case, substantial evidence supports the ALJ's determination that Plaintiff did not require speed- and/or pace-based

restrictions. In June 2013, approximately a year and a half after her alleged onset date, Dr. Pawloski stated in her adult psychological evaluation:

> Plaintiff denie[d] any significant history of difficulty maintaining persistence and pace in performing tasks on the job even with a history of depression. [Plaintiff] currently does not describe any difficulties in this area that would prompt any performance concerns by others. [Plaintiff] was able to follow the flow of conversation across the 55-minute interview appropriately.

Tr. at 731.

Additionally, Plaintiff's testimony indicates that her problems in the workplace were mainly related to psychological and emotional problems, as she was fired from her last job for attempted assault after she tried to run over a fellow employee for lying. *See* Tr. at 168-69. Dr. Myerholtz's progress notes also support Defendant's contention that the reasons Plaintiff claimed she was unable to work were related to social anxiety, rather than the pace at which she could work.[3] As stated by the Court in *Jackson*, "*Ealy* stands for a limited, fact-based ruling in which the claimant's particular moderate limitations required additional speed- and pace-based restrictions." 2011 WL 4943966, at *4. In the instant case, the facts do not support Plaintiff's contention that she was limited to work that did not include fast-paced production demands. For these reasons, the undersigned recommends that the Court find that substantial evidence supports the ALJ's RFC finding, and dismiss Plaintiff's case with prejudice.

## VII.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

Date: March 29, 2017         */s/George J. Limbert*
                             GEORGE J. LIMBERT
                             UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

[3] *See supra*, at 2-7.